Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 1601 | **DATE** | 1/10/2001 |
| **CASE TITLE** | C&F PACKING vs. PIZZA HUT, INC. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order denying summary judgment.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 1 2 2001 | 798 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 JAN 11 PM 3:19 | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

C&F PACKING CO., INC.,

    Plaintiff,

v().

PIZZA HUT, INC.,

    Defendant.

No. 93 C 1601
Judge James B. Zagel

**DOCKETED**
**JAN 1 2 2001**

MEMORANDUM OPINION AND ORDER

This case involves the secret recipe for sausage toppings on Pizza Hut pizza. Beginning in 1982, Plaintiff C&F Packing Co. ("C&F") supplied defendant Pizza Hut, Inc. ("Pizza Hut") with "casing cooked" Italian sausage pizza topping. Plaintiff says that defendant coerced it into divulging its sausage recipe and then covertly disclosed the recipe to IBP, Inc. – another, larger Pizza Hut meat supplier – which was prepared to make sausage toppings more cheaply. C&F sued Pizza Hut and IBP for misappropriation of trade secrets on April 23, 1993.

A jury awarded C&F a multi-million dollar verdict in its case against IBP. C&F's case against Pizza Hut, however, never got past a motion to dismiss. Judge Williams concluded that C&F should have known in 1986 that Pizza Hut betrayed their confidential relationship and misappropriated trade secrets. C&F having waited until 1993 to sue, Judge Williams found that its misappropriation claim was barred by the three-year statute of limitations in the Kansas Uniform Trade Secrets Act, K.S.A.§ 60-3325.

The Federal Circuit reversed that dismissal, finding that nothing in Pizza Hut's dealings with C&F in 1986 would have informed C&F of an intention by Pizza Hut to divulge trade

1

798

secrets to IBP. The Federal Circuit remanded the case for further fact-finding on the timing of accrual of the cause of action for misappropriation. See *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296 (Fed. Cir. 2000). Having supplemented the record on appeal with further evidence in support of its statute of limitations defense, Pizza Hut now moves for summary judgment.

I. FACTS

The history of the trade secrets at issue in this case stretches back nearly twenty years. Plaintiff, a small-time sausage supplier for Pizza Hut, came up with an idea about a new way to make pre-cooked sausage topping that would have the appearance and taste of homemade sausage cooked on site. After four years of experimentation, C&F had perfected its revolutionary sausage-making process. The C&F process resulted in a sausage topping which tasted better, looked better, and cost less than pre-cooked sausage made by other methods. Plaintiff patented both its sausage-making process and its sausage-making apparatus.

In 1985, things were looking good for C&F. Pizza Hut was showing a great deal of interest in its product. Pizza Hut told C&F that it wanted to buy large quantities of sausage and allegedly promised to enter into a long-term supplier contract. In return, Pizza Hut wanted to know all of the information about plaintiff's sausage-making process; it also wanted C&F to divulge its sausage-making technique to its other, larger suppliers.

C&F complied with its side of the bargain. In late 1985, pursuant to a confidentiality agreement, C&F executives disclosed its secret process to Pizza Hut. It also provided four Pizza Hut meat suppliers with complete access to its trade secrets.

Nearly a year later, despite repeated requests from C&F, the promised long-term contract had not materialized. On March 4, 1986, Pizza Hut told C&F that Pizza Hut would not buy its

sausages in the quantity it had promised and that it would not buy any of its product unless it decreased its prices. Pizza Hut subsequently exacted a series of price cuts.

Pizza Hut sought out IBP, Inc. as a new meat supplier in or around 1989. C&F says that it discovered in 1991 that IBP was making "casing cooked" sausage for Pizza Hut. By late 1991, IBP was supplying Pizza Hut with significant levels of sausage allegedly made by the C&F process. Pizza Hut correspondingly ratcheted down its purchases from C&F. A tour of the IBP factory in 1993 increased C&F's suspicion that Pizza Hut had disclosed its secret process. Within days of C&F's visit to IBP to investigate its patent infringement claim, Pizza Hut terminated C&F as a supplier.

## II. ANALYSIS

The sole issue before me is whether C&F's complaint is barred by the three-year statute of limitation provision in the Kansas Uniform Trade Secrets Act, K.S.A.§ 60-3325 ("KUTSA"). Under KUTSA, actual knowledge of misappropriation is not required to trigger the statute of limitations. Rather, the statute begins to run "when [plaintiff] reasonably should have known of the defendant's misappropriation." *McCaffree Financial Corp. v. Nunnink*, 847 P.2d 1321, 1331 (Kan. Ct. App. 1993). To succeed on summary judgment, Pizza Hut must show that there is no material fact as to whether C&F discovered, or by the exercise of reasonable diligence should have discovered, Pizza Hut's misappropriation on or before April 29, 1990.

According to Pizza Hut, the record shows that C&F should have known long before the alleged disclosures to IBP in 1989/90 that Pizza Hut had misappropriated its trade secrets. Pizza Hut reads the complaint as describing a "continuing misappropriation" beginning in 1985 with Pizza Hut's alleged "project to duplicate" and culminating in the alleged disclosure to IBP. The

3

evidence which, according to defendant, shows that plaintiff should have known of the misappropriation includes:

- testimony by the C&F president that he knew by September of 1995 that defendant disclosed plaintiff's process to other suppliers as part of an effort to duplicate the process;
- C&F's admissions that it was aware by March 4, 1986 that Pizza Hut had reneged on its alleged promise to enter into a long-term contract;
- C&F's receipt on or about July 31, 1986 of Pizza Hut's "standard formulation" for sausage which C&F claimed incorporated its trade secrets;
- C&F's issuance in November 1987, January 1988, and April 1988 of several "cease and desist letters" to Pizza Hut suppliers alleging misappropriation of trade secrets.

C&F's position is that its claim accrued at the earliest in 1992, when C&F learned that IBP was making pre-cooked sausage. Even at that point, it says, it had only vague suspicions of Pizza Hut's involvement. It was not until March 1993, when C&F officials inspected the IBP factory, that plaintiff argues it "reasonably should have known" of the misappropriation.

I find that defendant is correct in its contention plaintiff clearly became dissatisfied with Pizza Hut's way of doing business at least five years before the filing of the lawsuit. But the issue is not when Pizza Hut began to treat its supplier badly; it is when Pizza Hut began to misappropriate plaintiff's trade secrets by covertly disclosing them to other suppliers.

Under Kansas law, misappropriation means:

"(ii) disclosure or use of a trade secret of another without express or implied consent by a person who . . .
(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . .
(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." K.S.A. § 60-3320.

4

The definition of misappropriation requires both an acquisition of confidential information and an unauthorized *disclosure or use* of that information. It follows that Pizza Hut's initial acquisition of C&F's trade secrets in the mid-1980's – even if done with an improper motive – was not on its own an act of misappropriation. Refusal to enter into a promised long-term contract was also not an act of trade secret misappropriation. While it may have foreshadowed bad things to come, a reasonable trier of fact could conclude that C&F could not have foreseen, in the failure to offer a long-term contract, that Pizza Hut was about to disclose its trade secrets. Similarly, C&F's letter to Pizza Hut (dated May 2, 1988) warning it not to purchase sausage made by the C&F process from unlicensed sources does not necessarily show that plaintiff understood Pizza Hut had misappropriated its trade secrets.

Defendant's stronger argument is that C&F had clear notice by mid-1986 that Pizza Hut had incorporated C&F's trade secrets into Pizza Hut's standard sausage formulation for use with all Pizza Hut suppliers. But even this does not warrant the grant of summary judgment. Although Pizza Hut has proffered testimony by C&F executive Joe Freda which purportedly shows that C&F knew that the formulation incorporated plaintiff's trade secrets before 1990, plaintiff has offered an explanation for why Freda's testimony does not mean what Pizza Hut says it does. A reasonable finder of fact might credit either side's interpretation. "[W]here there is evidence in dispute as to when plaintiff's injury first became reasonably ascertainable, the question is one for the trier of fact." *McCaffree Financial Corp.*, 847 P.2d at 1330-31.

This record, like the record submitted to the Federal Circuit, does not support a definitive conclusion on an accrual date. The Federal Circuit remanded this case to me for "further fact-

5

finding" on the timing of accrual of the cause of action for misappropriation. And further fact-finding there shall be. Pizza Hut's motion for summary judgment is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: _____